NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BRENDAN A. DANIEL,**
*Petitioner,*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent.*

---

2011-3097

---

Petition for review of the Merit Systems Protection Board in Case No. DA0841090711-B-1.

---

Decided: December 13, 2011

---

BRENDAN A. DANIEL, Abita Springs, Louisiana, pro se.

DELISA M. SANCHEZ, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, REGINALD BLADES, Assistant Director. Of counsel on the brief was WADE

PLUNKETT, Office of Personnel Management, Office of the General Counsel, of Washington, DC.

————————————

Before LOURIE, SCHALL, and PROST, *Circuit Judges*.

PER CURIAM.

Brendan A. Daniel petitions for review of a final decision by the Merit Systems Protection Board ("Board") regarding the calculation of his disability retirement annuity upon reinstatement. We affirm.

## BACKGROUND

In 1996, Daniel was granted disability retirement under the Federal Employees' Retirement System ("FERS") from his position as a maintenance worker. He received uninterrupted disability annuity payments until the Office of Personnel Management ("OPM") terminated his benefits in 2006 because his earned income had exceeded the statutory limits on FERS disability annuitants. *Daniel v. Office Pers. Mgmt.*, 245 F. App'x 969 (Fed. Cir. 2007). In particular, Daniel's wages rose in 2005 after he worked substantial overtime hours as required by his employer in the wake of Hurricane Katrina; his reported income ultimately exceeded 80% of the then-current pay rate for the maintenance position he occupied immediately before retiring. OPM therefore determined, as mandated by 5 U.S.C. § 8455(a)(2), that Daniel's earning capacity had been restored and terminated his benefits as of June 30, 2006. *Daniel*, 245 F. App'x at 971.

Daniel's income dropped below the 80% statutory threshold in 2007, and he successfully petitioned OPM to reinstate his FERS disability annuity, effective January 1, 2008. *Daniel v. Office Pers. Mgmt.*, No. DA-0841-09-

0711-B-1 (M.S.P.B. May 5, 2010). OPM initially reinstated his annuity at $1,309 per month, which represented 60% of Daniel's "high-three" average salary—the highest average salary he received over any three-year period of qualifying employment. In December 2008, OPM notified Daniel that his monthly payments would be reduced to 40% of his high-three average salary—declining to $873 per month—from 2009 forward in accordance with 5 U.S.C. § 8452(a)(1) and 5 C.F.R. § 844.404(d). These reinstated annuity payments did not preserve the cost-of-living increases that Daniel had accumulated between 1996 and 2006. *Id.*

Daniel disputed OPM's annuity calculation, seeking to recapture the cost-of-living adjustments included in the higher annuity rate he had been receiving in 2006. He also sought to recoup payments lost while his benefits were terminated. *Id.* On November 3, 2009, OPM affirmed its annuity calculations as consistent with the governing statutes and regulations. On appeal to the Board, Daniel renewed his earlier requests, submitted evidence documenting his financial difficulties, and argued that equity and fairness require restoring his pretermination FERS annuity rate. While expressing sympathy for Daniel's situation, the Administrative Judge ("AJ") held that OPM correctly calculated Daniel's reinstated disability annuity under the applicable statutes and regulations. *Id.* The Board denied Daniel's petition for review, and the AJ's decision became the final decision of the Board on January 10, 2011. *Daniel v. Office Pers. Mgmt.*, No. DA-0841-09-0711-B-1 (M.S.P.B. Jan. 10, 2011). Daniel timely appealed from the Board's decision, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

We must affirm decisions of the Board unless they are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

As recognized by OPM and the Board, reinstated FERS annuities are calculated according to § 8452, which in relevant part provides:

> [T]he annuity of an annuitant under this subchapter—
> (i) for the period beginning on the date on which such annuity commences, or is restored (as described in section 8455(b)(2) or (3)) and ending at the end of the twelfth month beginning on or after such date, shall be equal to 60 percent of the annuitant's average pay; and
> (ii) after the end of the period referred to in clause (i), shall be equal to 40 percent of the annuitant's average pay.

5 U.S.C. § 8452(a)(1)(A)(i)-(ii) (2006). Section 8401(3) defines "average pay" as "the largest annual rate resulting from averaging an employee's or Member's rates of basic pay in effect over any 3 consecutive years of service . . . ." 5 U.S.C. § 8401(3) (2006). Bound by these statutes, OPM keyed its reinstatement calculations to Daniel's high-three average salary: He received 60% for the first year following reinstatement and 40% thereafter.

Daniel's appeal brief is difficult to decipher, but it does not appear to dispute the reduction from 60 to 40%.

It again appears to suggest that he should have retained the cost-of-living adjustments retroactive to his original retirement in 1996. He cites various provisions relating to the Civil Service Retirement System ("CSRS"), which direct OPM to reinstate terminated CSRS disability annuity payments at the same rate in effect before termination, *see, e.g.*, 5 U.S.C. § 8337; 5 C.F.R. § 831.1211, and emphasizes parallels between these and analogous provisions governing FERS. But Daniel is not covered under CSRS, so the cited authorities are not relevant to his appeal. And in fact, as Daniel acknowledges, the statutes governing CSRS and FERS "are different"; one aspect of clear distinction lies in their treatment of reinstated disability benefits. *E.g., compare* 5 U.S.C. § 8337(e) (2006) ("his [CSRS] annuity shall be restored at the *same rate*") *with* 5 U.S.C. § 8455(b)(2) (2006) ("the [FERS] annuity of such individual shall be restored at the *applicable rate under section 8452*") (emphases added). The latter FERS provision governs here. The "applicable rate" under § 8452 consists of the high-three average salary as determined at the original time of retirement in 1996 and does not specify subsequent cost-of-living adjustments. OPM was obligated to follow § 8452, and it did.

Daniel cites a host of other statutory, regulatory, legislative, and judicial materials, but he has not identified, nor do we find, any authority that would allow OPM to reinstate his FERS disability annuity at the 2006 rate. Though Daniel argues that the result appears unfair in this case, OPM lacks the authority to disregard statutory directives for calculating disability annuity payments. *See Office Pers. Mgmt. v. Richmond*, 496 U.S. 414, 430 (1990). We are therefore bound to affirm the decision of the Board.

**AFFIRMED**

Costs

No costs.